McBRIDE, Judge.
By this suit the two plaintiffs seek an accounting from the defendant, John A. Stassi, who is alleged to have been their agent, and for a judgment, jointly and in solido, against Stassi and Employers Liability Assurance Corporation, Ltd., the surety on his real estate broker’s bond, for the sum of $2,000 and for such additional sums as might be found to be due by Stassi unto plaintiffs.
The defendants in their answer in effect allege that John A. Stassi was the general agent of plaintiffs and was not acting in the capacity of real estate agent. Defendants admit that plaintiffs had made some demands on Stassi for an accounting, but it is alleged that on several occasions Stassi furnished accounts to them. Stassi then assumed the position of plaintiff in reconvention alleging that as the agent for plaintiffs he at various times and places received certain sums for the account of plaintiffs and made various advances to them and for their account and that an accounting, which is annexed to the answer, shows there is due him by plaintiffs the sum of $328.57 for which amount he prays judgment.
*401 After a trial on the merits of the case, there was judgment in favor of plaintiffs and against the defendants, jointly and in solido, for $382.94. Both defendants have appealed.
After the transcript of appeal had been lodged in this court, Miss Santa Liuzza, one of the plaintiffs, died and by judgment rendered in her succession proceedings in the Twenty-fourth Judicial District Court for the Parish of Jefferson the other plaintiff, Miss Rose E. Liuzza, was recognized as the decedent’s sole and only heir at law and was as such sent into possession of the entire estate left by decedent. Pursuant to proper motion Miss Rose E. Liuzza was substituted as plaintiff in lieu of her deceased sister and co-plaintiff and thus became the only plaintiff.
When the case was argued before us, it appeared as though we were dealing with a suit for an extremely complicated accounting as the arguments of counsel only served to confuse the court, they presenting to us a confused mass of figures and data. But after analyzing the record, the matter of reaching a proper accounting is relatively simple. Our analysis of the record shows that Stassi, as the real estate agent for the Misses Liuzza, is indebted unto them in the sum of $382.-94, which is the precise amount for which the court below rendered judgment against the defendants. The following items and figures were assembled from the record and these fully show the pertinent monetary transactions between the parties:
[[Image here]]
[[Image here]]
*402 [[Image here]]
John A. Stassi is a duly licensed real estate agent; the Misses Liuzza were the owners of the property known as 110 Woodlawn Avenue, Forest Hills, Metairie, Jefferson Parish. Although the plaintiffs had never “listed” the property with him for sale, Stassi, on September 17, 1951, secured an offer from Louis J.. Giacona to purchase plaintiffs’ property for the sum of $20,000 in cash, the offer being conditioned upon the ability of Giacona to borrow, with the property as security, the sum of $13,000. Giacona agreed to deposit with Stassi immediately upon the acceptance of the offer by the owners of the property 10 per cent of the purchase price, or $2,000. On the same day Stassi submitted the offer to purchase to the plaintiffs who accepted it. Giacona never at any time deposited the $2,000 hut gave to Stassi, in lieu of thé cash, his note for $2,000.
It appears that Giacona owned an unimproved lot of ground which Stassi “accepted” for the account of the plaintiffs as a $5,500 deposit on the purchase price of plaintiffs’ property. Notwithstanding this, it does not appear that title to the lot was ever transferred by Giacona either to the Misses Liuzza or to Stassi, and title continued to remain in Louis J. Giacona until shortly afterward when Stassi was successful in selling the lot to a party named Bernard Day for the sum of $5,250. The formal act of sale was passed from Louis J. Giacona to Bernard Day some time prior to. the transfer of title of the Woodlawn Avenue property by the Misses Liuzza to Giacona. The proceeds of the sale of the lot, to wit: $5,250, were taken and retained by John. A. Stassi as being on account of the purchase price of the Liuzza property.
It also appears from the record that after agreeing to sell their property on Woodlawn Avenue to Giacona, the Misses Liuzza agreed to purchase the property 308 Tudor Street, Jefferson Parish, from one LeBlanc.
There is no question that at all times after they agreed to sell their property the Liuzza sisters were in dire financial straits, and that they requested Stassi to advance various and sundry amounts to them out of the cash deposit which they believed Giacona had made on account of the purchase of their property. Stassi has shown that not only did he make cash advances to plaintiffs but that he also paid certain bills for their account and paid to LeBlanc, whose property on Tudor Street the Misses Liuzza had agreed to buy, substantial amounts aggregating $4,437.24. All of the advances and expenditures by Stassi for, the account of the Liuzza sisters are fully shown by our tabulation above.
The sale of the Woodlawn Avenue property ultimately took place December 3, 1951, and all of the money accruing to the Misses Liuzza as a result of the transaction passed through the hands of Stassi, with the exception, however, of the $13,-000 which Giacona had borrowed to finance his purchase. This $13,000 was handled by the notary public before whom the act of sale was passed. . .
*403 In his accounting rendered to the Liuzza sisters with his answer to the suit, Stassi claims there is due him, and he reconvenes therefor, the sum of $328.57. One of the debit items is shown as an advance of interest to the amount of $9 to the Metairie Bank. The advance is denied by plaintiffs and Stassi has never proven that he made it. Stassi is clearly in error in stating in his account that the sale price of the Liuzza property was $19,500. The property was sold for $20,000, as is shown both by Giacona’s offer to purchase and a certified copy of the notarial act of sale. Stassi was also in error in his accounting in giving the Liuzza sisters credit for only $5,250 for the lot which Giacona supposedly traded in as part payment of the Liuzza property. The agreement between Stassi and Giacona was that the unimproved lot was accepted for the account of the Liuzza sisters for $5,500, and the fact that Stassi, without authorization from his clients, took it upon himself to sell the lot for $5,250 should not expose the Liuzza sisters to the $250 loss resulting from the sale from Giacona to Day.
The item of $252.51 appearing on Stassi’s accounting is an interesting one and requires discussion. After the Liuzza sale there remained in the hands of the notary public a balance of $1,747.49 out of the $13,000 which Giacona had managed to borrow on the property. The notary drew his check for this balance to the Misses Liuzza. However, it appears that the lending institution from which Giacona had borrowed the $13,000 had stipulated, as a condition precedent, that Giacona would deposit with it the sum of $2,000 in cash to guarantee that Giacona would make certain improvements on the property in order to justify the loan of $13,000. Gia-cona, being without funds, was unable to make the deposit with the lending institution and it appears that Stassi solved the problem by letting the institution have the notary’s check for $1,747.49, which the Liuzza sisters endorsed, and by giving to the lending institution his own personal check for $252.51, which would make up the $2,000 deposit. Later on when Giacona had made the repairs to the property, the lending institution paid over the $2,000 deposit to Stassi who retained it. Notwithstanding this circumstance, Stassi contends that the Liuzza sisters owe him $252.51. This, of course, is untenable.
Stassi made another error in his account but this was to his detriment. He shows that the real estate broker’s commission due him by the Liuzza sisters amounted to $700 when actually the correct amount of the commission is $900.
In order to complete the description of all transactions had between the parties, it should be stated here that after the Liuzza sisters agreed to permit the $1,747.-49 to be deposited with Giacona’s lending institution, Giacona gave to them his note for $1,100 which they were finally able to collect but only after a lawsuit. As regards the note Stassi also made an error against his interest as he shows on his accounting that the note was for only $1,000 which amount he carries as a debit to Misses Liuzza.
So, if we take Stassi’s accounting and amend it according to our views expressed above, there remains due to the plaintiffs the exact amount shown by our own tabulation.
Nothing herein said by us should be construed as impugning Stassi’s honesty, our opinion being that his failure to pay the small balance to plaintiffs resulted from errors made when rendering an account to them and also from Stassi’s erroneous belief that the loss of the $250 on the sale of Giacona’s lot should be borne by the Liuzza sisters. However, we believe that Stassi, in some respects, acted without authority and neglected to keep his clients advised as to the state of their affairs, and that he to some degree violated those duties to which the relationship of real estate broker to his clients bound him. We conceive it to always be the duty of a broker to act strictly in conformity with his authority and in good faith and with reasonable care, skill and diligence.
*404 In the court below the Employers Liability Assurance Corporation, Ltd., interposed an exception of no cause of action to plaintiffs’ suit which was overruled and we think correctly so, for the reason that the bond which this defendant furnished on behalf of Stassi as a real estate broker covered the transactions between Stassi and the Misses Liuzza. Surely, the latter were the clients of Stassi and their claim against Stassi arose out of his dealings with them as real estate broker in the sale of their property.
For the reasons assigned, the judgment appealed from is amended so as to run only in favor of Miss Rose E. Liuzza, and as thus amended and in all other respects, it is affirmed.
Amended and affirmed.