McBRIDE, Judge.
On March 3, 1958, in writing, plaintiff, Mrs. Mildred D. Treigle offered to purchase from Mr. and Mrs. Earl Paul Patrick, Jr., certain lots of ground in Square 22, fronting on Causeway Boulevard, for the price of $34,000, of which $10,000 was to be paid in cash, the balance to be represented by a first mortgage to be given by purchaser on the property (which mortgage was to be “carried” by the vendors), payable each year for 10 years, at interest not to exceed 6 percent. On the same day Mr. and Mrs. Patrick accepted the offer, and in accordance with the terms thereof, plaintiff deposited with Caruso-Goll, Realtors (a partnership), the vendors’ agent, the sum of $3,400, being 10 percent of the purchase price. The contract contained the following provisions:
“Act of Sales to be passed before Vendor Esq., Notary, on or prior to JUNE 3, 1958 at expense of purchaser.
* * * * ‡ *
“If this offer is accepted vendor agrees to pay the Agents commission of 10%, amounting to $3400.00 which commission is earned by Agent when this agreement is signed by both parties and when mortgage loan, if any, has been secured.
* * * }}< * *
“Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay the Agents Commission and all fees and costs incurred in enforcing collection-and damages.”
Nothing was ever done by plaintiff or the vendors to confect a formal sale on or prior to June 3, 1958. There was no putting in default between the parties and no demand for performance was made. Mrs. Treigle then brought this suit for the return of her deposit impleading the vendors and the agent as defendants; in addition she sought judgment against the vendors for damages. Caruso-Goll, Realtors, intervened and claimed a commission of $3,400 from both Mrs. Treigle and the Patricks, plus attorney’s fees, and prayed for judgment accordingly. Plaintiff recovered judgment against Caruso-Goll, Realtors, for $3,400, and all other demands were dismissed. Caruso-Goll, Realtors, has appealed.
The only issue is whether the real estate agent is entitled to a commission for having negotiated the agreement of sale.
Caruso-Goll, Realtors, had not the right to make its codefendants, the Pat-ricks, its defendants in reconvention, but whereas the asserted claim meets all the requirements of a demand against a third party, we will consider it as such and treat Mr. and Mrs. Patrick as third party defendants regardless of the denomination given the demand by the pleader. LSA-R.S. 13 :- 3381-3386 (now repealed by LSA-C.C.P. arts. 1031-1040, 1111-1116).
Under such a contract as is before us, a real estate broker is usually entitled to his commission as soon as he has obtained a purchaser who is ready, willing and able to pay the price agreed upon by the owner. If the vendor breaches the contract or is in default, he becomes liable for the agent’s commission. If the sale is not consummated due to the failure of the purchaser to take title, he owes the agent’s commission. If both parties are at fault, they are both liable.
Strangely, we have before us a case where the sale was not consummated he- *654 cause of the' actions of the agent, and the parties to the agreement raise said circumstance as their defense to the demand for the commission. The agreement stipulated that the sale was to be passed before the vendors’ notary on or prior to June 3, 1958, at the expense of purchaser. Uncontradict-ed evidence shows that Mrs. Anselmo, the representative of Caruso-Goll, Realtors, who negotiated the agreement, informed the vendors that she would undertake to secure a notary public for them who would pass the formal sale and that she would advise the vendors when Mrs. Treigle was ready to accept title. The vendors turned over to Mrs. Anselmo a copy of their title, placing reliance on her promise to secure the notary public and to advise them when the act would be passed. They heard nothing from the realtor’s representative. It was also shown that Mrs. Anselmo never ever furnished the vendors with a copy of the agreement until after the time stipulated for passing the sale had passed. The vendors did nothing except to wait in vain for news from Mrs. Anselmo.
Now as to Mrs. Treigle. Mrs. Anselmo furnished her with the copy of the title which she took to her attorney for the purpose of title examination. Mrs. Treigle states she was always ready, willing, able and anxious to accept title within the time stipulated and that whereas the vendors “were going to hold the mortgage,” she awaited word, which never came, as to when they would “give title.”
Blame for the passive breach of the agreement can be placed squarely on the shoulders of the agent, in that the conduct of its representative was responsible for leading the vendors into believing they should await advice as to which notary public was to officiate and when and where the transaction would be completed. This is sufficient to deprive the agent of the commission which under normal circumstances might be due him by the vendors.
If for any reason Mrs. Anselmo could not locate a notary public who was willing to pass the act, or if for any reason she changed her mind about securing the services of a notary public, the vendors should have been notified thereof timely so that they might do what was necessary to complete their agreement to sell.
The purchaser does not owe the commission. Mrs. Treigle never at any time refused to purchase the property and is not at fault. She had the title examined and was always ready to accept the sale whenever demand upon her to do so was made.
The judgment appealed from is affirmed.
Affirmed.